UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
SHIVAM BASSI,                              :   Case No.: _____
                                           :
        Plaintiff,                         :   **COMPLAINT**
                                           :
  -against-                                :   **DEMAND FOR JURY TRIAL**
                                           :
ARQULE, INC., PATRICK J. ZENNER,           :
PAOLO PUCCI, TIMOTHY C. BARABE,            :
SUSAN L. KELLEY, RONALD M. LINDSAY,        :
MICHAEL D. LOBERG, WILLIAM G.              :
MESSENGER, and RAN NUSSBAUM,               :
                                           :
        Defendants.                        :
----------------------------------------- X

Plaintiff Shivam Bassi ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against ArQule, Inc. ("ArQule" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with ArQule, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9 ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by Merck Sharp & Dohme Corp., through its subsidiaries (collectively "Merck"), to acquire all of the issued and outstanding shares of ArQule (the "Proposed Transaction").

1

2. On December 6, 2019, ArQule entered into an agreement and plan of merger (the "Merger Agreement"), whereby shareholders of ArQule common stock will receive $20.00 in cash for each share of ArQule stock they own (the "Offer Price").

3. On December 17, 2019, in order to convince ArQule shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the Company's financial projections; and (ii) the valuation analyses performed by ArQule's financial advisor, Centerview Partners LLC ("Centerview") in support of its fairness opinion.

4. The Tender Offer is scheduled to expire at one minute after 11:59 p.m., New York City time, on the twentieth (20th) business day following the commencement of the Offer (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to ArQule shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

2

violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. at 1316.

8. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, ArQule's common stock trades on the Nasdaq stock exchange, which is headquartered in this District, and ArQule hired Skadden, Arps, Slate, Meagher & Flom LLP as a legal advisor and Centerview as a financial advisor for the purposes of the Proposed Transaction, both of which are also headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ArQule common stock.

10. Defendant ArQule is a biopharmaceutical company engaged in the research and

3

development of targeted therapeutics to treat cancers and rare diseases. The Company's common stock trades on the Nasdaq under the ticker symbol "ARQL".

11. Individual Defendant Patrick J. Zenner is a director of ArQule and is the Chairman of the Board.

12. Individual Defendant Paolo Pucci is a director of ArQule and is the Chief Executive Officer of the Company.

13. Individual Defendant Timothy C. Barabe is, and has been at all relevant times, a director of the Company.

14. Individual Defendant Susan L. Kelley is, and has been at all relevant times, a director of the Company.

15. Individual Defendant Ronald M. Lindsay is, and has been at all relevant times, a director of the Company.

16. Individual Defendant Michael D. Loberg is, and has been at all relevant times, a director of the Company.

17. Individual Defendant William G. Messenger is, and has been at all relevant times, a director of the Company.

18. Individual Defendant Ran Nussbaum is, and has been at all relevant times, a director of the Company.

19. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.   Background of the Company and the Tender Offer**

20. ArQule is a biopharmaceutical company that is engaged in the research and

development of therapeutics to treat cancers and rare diseases. These drugs focus on the biological pathways implicated in a range of cancers and certain non-oncology indications. Its clinical-stage pipeline consists of approximately four drug candidates, all of which are in targeted patient populations. The Company's product candidates include ARQ 531, Miransertib (ARQ 092), ARQ 751, Miransertib (ARQ 092) and ARQ 751. ARQ 531 is a potent and reversible dual inhibitor of both wild type and C481S-mutant Bruton's tyrosine kinase (BTK). ARQ 092 is a potent and selective inhibitor of protein kinase B (AKT), a serine/threonine kinase. ARQ 751 is a potent and selective inhibitor of AKT that is in Phase I clinical development for solid tumors harboring AKT, phosphoinositide 3-kinase (PI3K). ARQ 087 is a multi-kinase inhibitor designed to preferentially inhibit the fibroblast.

21.  Merck is a global healthcare company. The Company offers health solutions through its prescription medicines, vaccines, biologic therapies and animal health products. It operates through four segments: Pharmaceutical, Animal Health, Healthcare Services and Alliances. The Company's Pharmaceutical segment includes human health pharmaceutical and vaccine products marketed either directly by the Company or through joint ventures. Human health pharmaceutical products consist of therapeutic and preventive agents, generally sold by prescription, for the treatment of human disorders. The Company sells its human health pharmaceutical products primarily to drug wholesalers and retailers, hospitals, government agencies and managed healthcare providers, such as health maintenance organizations, pharmacy benefit managers and other institutions. Vaccine products consist of preventive pediatric, adolescent and adult vaccines, primarily administered at physician offices.

22.  On December 9, 2019, ArQule and Merck issued a joint press release announcing the Proposed Transaction. The press release stated in relevant part:

**Merck to Acquire ArQule, Advancing Leadership in Oncology**

**Acquisition Further Diversifies Merck's Oncology Pipeline with Expansion into Targeted Therapies That Treat Hematological Malignancies**

KENILWORTH, N.J., and BURLINGTON, Mass., Dec. 9, 2019 – Merck (NYSE: MRK), known as MSD outside the United States and Canada, and ArQule, Inc. (Nasdaq: ARQL) today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire ArQule for $20 per share in cash for an approximate total equity value of $2.7 billion. ArQule is a publicly traded biopharmaceutical company focused on kinase inhibitor discovery and development for the treatment of patients with cancer and other diseases. ArQule's lead investigational candidate, ARQ 531, is a novel, oral Bruton's tyrosine kinase (BTK) inhibitor currently in a Phase 2 dose expansion study for the treatment of B-cell malignancies.

"ArQule's focus on precision medicine has yielded multiple clinical-stage oral kinase inhibitors that have novel and important properties," said Dr. Roger M. Perlmutter, president, Merck Research Laboratories. "This acquisition strengthens Merck's pipeline with the addition of these strategic assets including, most notably, ARQ 531, a compelling candidate for the treatment of B-cell malignancies."

BTK inhibition has been shown to prevent B-cell receptor signaling that is critical for the survival and proliferation of leukemic cells in many B-cell malignancies. ARQ 531 is a highly selective, reversible inhibitor that blocks both wild-type BTK and the C481S mutant form of the enzyme that is commonly associated with resistance to other BTK inhibitors. In early clinical trials, ARQ 531 demonstrated a manageable safety profile and early signs of anti-tumor activity for the treatment of patients with relapsed or refractory chronic lymphocytic leukemia (CLL) and Richter's Transformation. Final data from the Phase 1 study of ARQ 531 will be presented on Dec. 9, 2019 at the 61st American Society of Hematology (ASH) Annual Meeting & Exposition in Orlando, Florida.

"We are proud that Merck has recognized the contributions that ArQule, together with its scientific collaborators, has made to the field of precision medicine in oncology with ARQ 531 for the treatment of B-cell malignancies and with the rest of our clinical-stage pipeline," said Paolo Pucci, CEO, ArQule. "With this agreement, ArQule's pipeline will benefit from Merck's vast capabilities and determined engagement to benefit the patients who we have always strived to serve."

Under the terms of the acquisition agreement announced today, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of ArQule. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of ArQule's outstanding shares, the expiration of the waiting period under the Hart-Scott-

Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck's acquisition subsidiary will be merged into ArQule, and any remaining shares of common stock of ArQule will be canceled and converted into the right to receive the same $20 per share price payable in the tender offer. The transaction is expected to close early in the first quarter of 2020.

BofA Securities acted as financial advisor to Merck in this transaction and Covington & Burling LLP as its legal advisor. Centerview Partners acted as exclusive financial advisor to ArQule and Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor.

23. The Offer Price is inadequate consideration for ArQule shareholders and does not reflect fair value for the Company. Further, the Recommendation Statement concedes that the Company's executive officers and the members of the Board have interests in the Proposed Transaction "that are different from, or in addition to" those of the Company's common shareholders. Recommendation Statement at 4, 23. These interests include, but are not limited to, lucrative golden parachute compensation, continued employment, and vesting of stock options that would result from the consummation of the Proposed Transaction. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for shareholders to make an informed decision on whether to tender their shares in the Tender Offer.

## II.  The Recommendation Statement Is Materially Incomplete and Misleading

24. On December 17, 2019, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC. The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents or omits material information that is necessary for ArQule shareholders to make an informed

decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

25. First, the Recommendation Statement omits critical financial projections, including ArQule's net income projections (the "Net Income Projections"). Defendants elected to include a summary of the Company's financial projections in the Recommendation Statement, but they excised and failed to disclose the Net Income Projections. By disclosing certain projections in the Recommendation Statement and withholding the Net Income Projections, Defendants render the tables of projections on page 26 of the Recommendation Statement materially incomplete and provide a misleading valuation picture of ArQule to its shareholders. Simply put, net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

26. Unlike poker where a player must conceal his unexposed cards, the object of a recommendation statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections but have omitted the Net Income Projections. This omission renders the projections included in the Recommendation Statement misleadingly incomplete.

27. Second, the Recommendation Statement describes Centerview's fairness opinion and valuation analyses performed in support of its opinion. Defendants concede the materiality

of this information in citing Centerview's fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to ArQule shareholders. Recommendation Statement at 19; *see also* Recommendation Statement at 29 ("The following is a summary of the material financial analyses prepared and reviewed with the ArQule Board in connection with Centerview's opinion, dated December 6, 2019."). However, the summary of Centerview's fairness opinion and analyses provided in the Recommendation Statement fails to include key inputs and assumptions underlying its analysis. Without this information, as described below, ArQule's shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in deciding whether to tender their shares in the Tender Offer. *See* Recommendation Statement at 29 ("Considering the data in the tables below without considering all financial analyses or factors or the full narrative description of such analyses or factors, including the methodologies and assumptions underlying such analyses or factors, could create a misleading or incomplete view of the processes underlying Centerview's financial analyses and its opinion."). The following omitted information, if disclosed, would significantly alter the total mix of information available to ArQule's shareholders.

28. In summarizing Centerview' *Discounted Cash Flow Analysis* the Recommendation Statement fails to disclose the inputs and assumptions underlying the calculation of the discount rate range of 11.0% to 13.0%, (including WACC and CAPM components).

29. These key inputs are material to ArQule shareholders, and their omission renders the summary of Centerview' *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles explaining

the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions: in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> *There* is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).

30.     Without the discount rate inputs, ArQule shareholders cannot evaluate for themselves the reliability of Centerview's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value per share range reflects the true value of the Company or was the result of Centerview's unreasonable judgment, and make an informed decision regarding whether to tender their shares in the Tender Offer.

31.     In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and other ArQule shareholders will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus

threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

34. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

36. In doing so, Defendants made untrue statements and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were

therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

37.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholders would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

38.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

39.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

**COUNT II**
**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

42. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

43. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

44. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

45. The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9 if other SEC regulations specifically require disclosure of the omitted information.

46. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, that render the Recommendation Statement misleadingly incomplete. Defendants knowingly or with deliberate recklessness

omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

47. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III
**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of ArQule within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of ArQule, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent

the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing the Recommendation Statement.

52. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages

C. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 27, 2019                **MONTEVERDE & ASSOCIATES PC**

By: _/s/ Juan E. Monteverde_
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118 Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*